(15 App. Div. 417.)

BARBER ASPHALT–PAVING CO. v. NEW YORK POST–GRADUATE MEDICAL SCHOOL AND HOSPITAL.

(Supreme Court, Appellate Division, First Department.   March 19, 1897.)

WORK AND LABOR—AGREEMENT AS TO PRICE.

> An application by defendant for leave to excavate under the sidewalk in front of certain premises was refused by the city without the consent of plaintiff, who had recently paved the street.  Plaintiff gave the consent at the request of defendant's architect, and asked defendant to send a letter stating that it would be responsible for any damages done to the pavement. The next day the architect sent plaintiff a writing by which defendant's building committee agreed that any damage to the pavement would be repaired by plaintiff on agreed charges.  Repairs were made, and a bill was rendered for them.  Defendant did not object to the bill on the ground that no prices were agreed upon, but asked plaintiff to divide the bill in two parts, giving as a reason that the builder was liable for part of the damage. *Held*, that defendant could not defeat recovery on the ground that no charges had been agreed on.

Appeal from trial term, New York county.

Action by the Barber Asphalt-Paving Company against the New York Post-Graduate Medical School and Hospital.   The complaint was dismissed, and plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

W. W. Niles, for appellant.

A. E. Blackmar, for respondent.

VAN BRUNT, P. J.   This action was brought for work, labor, and services performed and materials furnished in repairing certain asphalt pavement which was injured by the excavation for a vault in front of the defendant's premises.   The answer of the defendant admitted its incorporation, and denied each and every other allegation in the complaint.   The facts developed upon the trial were as follows:   The plaintiff had laid the asphalt pavement upon the street in front of the defendant's premises under a contract with the city to maintain the same in repair for 15 years.   The defendant desiring to excavate under the sidewalk for a vault, its architect applied for a permit, which the city refused to issue without the consent of the plaintiff, because the pavement had not been accepted by the city.   The architect (Mr. Tuthill) then applied to the plaintiff for such permission, and he was told that, if he sent to the plaintiff a letter stating that the defendant would be responsible for the pavement, it would grant the permission.   In that conversation Mr. Tuthill asked what the price of the pavement would be,

and he was told. The plaintiff sought to prove this conversation with Tuthill, but it was excluded and an exception taken. On the 9th of December, 1892, the plaintiff sent to Mr. Tuthill a letter as follows:

"Inclosed I hand you the necessary consent to get your permit for vault at 20th street and 2nd avenue. Kindly send us a letter stating that, in case the pavement is damaged whatever by the building of this vault, you will be responsible for same."

On the 10th of December the plaintiff received a letter from Mr. Tuthill as follows:

"According to my promise, I inclose to you the agreement of the New York Post-Graduate Medical School and Hospital to have your company repair the pavement of Second avenue."

This agreement was as follows:

"The building committee of the New York Post-Graduate Medical School and Hospital hereby agrees that such reparation of the pavement in front of its property on the northeast corner of Second avenue and 20th street, in the city of New York, and extending northward ninety-eight feet three inches (98' 3"), and that may be damaged by any work of excavation for or construction of the hospital building to be erected upon said property, will be made by the Barber Asphalt-Paving Company upon agreed charges.

"D. B. St. John Roosa, Chairman."

The work of excavation was thereupon conducted in front of the defendant's premises. The pavement was damaged and required repairing, and the plaintiff repaired the pavement in front of the defendant's premises, as well as some pavement which was injured in front of adjoining premises. After the completion of the work, and on or about the 31st of January, 1894, a bill for the same was sent to the defendant. The architect thereupon requested the plaintiff to divide the bill into two portions,—one covering the hospital property, and the other covering the piece of property adjoining,— giving as a reason to the plaintiff that the builder was chargeable with the portions in front of the hospital. The plaintiff made out two bills,—one covering the property north of the hospital, and the other the property fronting the hospital. These bills were delivered to the defendant. On or about the 9th of March the plaintiff received a check from the defendant for the work done in front of the property adjoining the hospital, but objection seems to have been made to the payment of the bill for the work done in front of the hospital upon the ground that the builder was responsible; and on request being made by the defendant for the correspondence between Tuthill, the architect, and the plaintiff, the same was on the 4th of July, 1894, sent to the defendant, with the statement that the contractor was never mentioned in the negotiations with respect to the doing of this work, and that the plaintiff interpreted the meaning of the agreement which the defendant had signed to be that it would settle for the replacing of the pavement which was injured. On the 11th of June, 1894, the defendant sent a reply to this letter, stating that they were informed that their liability was merely that of a guarantor, and that the plaintiff should prove its claim against the estate of the contractors, and receive its dividends, and then that they would pay the difference between the proper

charge and the amount that the plaintiff had received from the contractor's estate.    On the 12th of July this action was commenced to recover for the work done in repairing the pavement in front of the defendant's premises.    Upon the trial the foregoing facts appeared, and also that the work was in charge of a building committee appointed by the defendant.    It appeared that this committee did not give their personal attention to all the details of the work, but that that was done by the architect, who had the authority of an architect,—"the usual authority that architects have, no more, no less," as Dr. Roosa testified.    It appears from the testimony that the architect had authority to obtain estimates and to ascertain prices, and that it was his duty to report these facts to the building committee.    The plaintiff also offered evidence tending to show the value of the work done.    Upon the completion of the plaintiff's case, defendant moved to dismiss the complaint upon the ground that there was no employment shown of the plaintiff by the defendant to do the work, and furthermore that whatever contract existed was to the effect that the charges to be made for the work were to be agreed upon, and, no charges having been agreed upon, no action could be maintained.    The court seems to have dismissed the complaint upon the latter ground, and to such dismissal the plaintiff duly excepted.    From the judgment thereupon entered this appeal is taken.

We cannot see that there was any defect in the proof of the plaintiff in its attempt to establish a claim against the defendant because of the doing of the work in question.    The claim that the architect was not authorized to bind the corporation by a contract may be entirely well taken; but it appears that he was authorized to get estimates for work to be done, and to report the same, and, as a result of this work which he was authorized to do, the contract of the defendant was signed and delivered.    It may be true that this contract is ambiguous, but the manner in which it was construed by the parties is certainly very pertinent evidence in determining its purport.    The plaintiff made its claim upon the defendant for this work, and there was no objection to payment upon the ground that a price had not been agreed upon; and a liability was admitted and acknowledged for the work which was done upon the premises adjoining the hospital property.    How any liability under that contract could exist for that portion, and not obtain as to the whole of the work, it is impossible to conceive from the evidence in this case.    And furthermore after the bills had been rendered the defendant claimed that its obligation was only secondary, that it was only a guarantor, and that the contractor should pay the amount.    But there is not the slightest particle of evidence that the plaintiff ever heard of the contractor until after the work had been done, or that any such claim had ever been presented to it.    The plaintiff agreed to do the work provided the defendant would become responsible.    The defendant, in order to induce the plaintiff to do the work, sent the agreement, and the plaintiff did the work.    There is certainly no element of guaranty contained in this contract, nor was it hinted at in the negotiations

preceding it. It was claimed upon the trial that the defendant did not order the work to be done. But the evidence showed that the work was ordered to be done by its architect, and that it knew that the work was done, and it must have known that it had a contract in respect to it, and when the bills were rendered no such reason for nonpayment was even hinted at. It seems to us that this whole idea of want of authority in the architect and failure to agree upon prices is an afterthought.

Judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

RUMSEY, PATTERSON, and O'BRIEN, JJ., concur.

INGRAHAM, J. I concur with the presiding justice. As stated in his opinion, it appears that the architect was authorized to get estimates for work to be done and to report the same, and upon such estimates, which he was authorized to obtain, contracts were made for the building. Acting within the scope of his authority to obtain for the defendant a permit from the city authorities to use the streets for building materials to be used in the construction of the building, the architect applied to the plaintiff to obtain consent which was required before a permit could be obtained from the city. The plaintiff offered to prove that the architect was informed as to the price that the plaintiff would charge for such repairs as were required in consequence of the use of the streets by defendant. This evidence was objected to by defendant and excluded, to which the plaintiff excepted. It seems to me quite clear that, if this information was given to the architect as to the terms upon which a contract would be made between the plaintiff and the defendant to do the work necessary to repair the pavement in case it was injured, it was received by the architect as the agent of the defendant; and, when the defendant subsequently made a contract by which the plaintiff was to do the work and the defendant was to pay the price agreed upon, it must be assumed that the information given to the architect, which he was authorized to receive on behalf of the defendant, was information received by the defendant through its agent, and that the giving of such contract by the defendant must be assumed to have been with the knowledge of the defendant communicated to the defendant's agent, was the basis upon which the contract was made, and was itself the terms agreed upon. There was thus a proposition to the defendant to do the work at the price named, which proposition was accepted by the defendant by the delivery of the contract to the plaintiff.